| | |
|---|---|
| FRANK FALZONE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) **MEMORANDUM OF LAW IN SUPPORT** |
| TOWN OF MOORESVILLE, NORTH | ) **OF DEFENDANTS' MOTION TO** |
| CAROLINA; CHIEF RON | ) **DISMISS PLAINTIFF'S COMPLAINT** |
| CAMPURCIANI, in his official and | ) **Fed. R. Civ. P. 12(b)(1), 12(b)(2), 12(b)(6)** |
| individual capacities; TRACEY JEROME, | ) |
| in her official and individual capacities, | ) |
| CHRIS CARNEY, in his individual | ) |
| capacity, | ) |
| | ) |
| Defendants. | |

**NOW COME** Defendants Town of Mooresville, Chief Ron Campurciani, Tracey Jerome, and Chris Carney, (collectively "Defendants"), by and through undersigned counsel, and pursuant to Local Rule 7.1, Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6), and file this Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Complaint.

## STATEMENT OF THE CASE

Plaintiff commenced this suit on February 9, 2026, and brings claims against Defendants under 42 U.S.C. § 1983 for (1) First Amendment Retaliation; (2) Fourteenth Amendment Due Process – stigma plus; (3) Fourteenth Amendment Due Process – property interest; (4) *Monell* claim; (5) Civil Conspiracy; (6) Wrongful Discharge in Violation of North Carolina Public Policy; and (7) North Carolina Whistleblower Act. *See generally,* (D.E. 1). Defendants now timely move to dismiss Plaintiff's Complaint, in its entirety.

## STATEMENT OF RELEVANT FACTS

### I. Plaintiff's Employment with the Town

Plaintiff was employed by the Town's Police Department ("MPD") since approximately 1996 and attained the rank of Assistance Chief of Police. (D.E. 1 ¶¶ 21, 22). As Assistant Chief, Plaintiff alleges his duties and responsibilities included ensuring compliance with body-worn camera policy, evidence retention, internal affairs integrity, and supervision over officers and staff while ensuring operations complied with legal and ethical standards. (*Id.* ¶¶ 23, 24).

Plaintiff alleges he was approached by Captain Clark, of MPD, in December of 2024 who reported an incident occurring at approximately 11:23 pm on January 30, 2024. (*Id.* ¶¶ 26-27). Clark allegedly reported he approached a traffic stop involving Mayor Carney and MPD Chief Campurciani, activated his body-worn camera, and observed behavior suggesting the Mayor was impaired. (*Id.* ¶¶ 27-28). Plaintiff contends he attempted to verify Captain Clark's reports and saw the CAD classified the incident as an "assist public" rather than a traffic stop, and that no body worn camera recording existed in the evidence system despite metadata confirming the camera was activated and deactivated. (*Id.* ¶¶ 29-30). Plaintiff alleges the lack of a recording coupled with a missing recording log raised concerns that policy was not followed in the handling of the January 30, 2024 "traffic stop." (*Id.* ¶¶ 31-32). Plaintiff believed his findings suggested "intentional manipulation or suppression of records designed to shield the Mayor from scrutiny and conceal the true nature of the encounter." (*Id.* ¶ 33).

In October of 2024, Plaintiff became aware of reports that Mayor Carney had been inside Town Hall after business hours with a female companion. (*Id.* ¶ 34). Plaintiff became aware because law enforcement responded to Town Hall upon activation of an alarm and was allegedly concerned about whether responding officers "were permitted and supported to adequately investigate alarm calls." (*Id.*). Instead of investigating his alleged concerns, Plaintiff waited to see how the Town would address the issue. (*Id.*). Plaintiff admits he does not know what, if any

2

contact responding officers had with the Mayor, but speculates they made contact and entered information into the CAD system, which was later altered. (*Id.* ¶ 36). Plaintiff alleges the Town failed to preserve relevant data and instead "discouraged scrutiny, minimized the significance of the event, and took steps to avoid, delay, suppress, or control review of the available electronic evidence." (*Id.* ¶ 38).

## II. Third Party Complaint Against Plaintiff

In March of 2024, Plaintiff was involved in an incident with a citizen. (D.E. 1 ¶ 48). In April of 2024, Chief Campurciani discussed with Plaintiff whether the off-duty civil dispute should have been reported to him. (D.E. 1 ¶ 47). In January of 2025, the Town received a citizen complaint regarding the March 2024 civilian incident. (*Id.* ¶ 48). On February 6, 2025, Chief Campurciani notified Plaintiff of the citizen complaint regarding his off-duty civil dispute. (*Id.* ¶ 47, 60). Chief Campurciani notified Plaintiff the complaint was delivered in sealed envelopes addressed to the Town Manager and Town Board members, but at the time, only the Town Manager and Chief were aware of it. (*Id .* ¶ 61). Plaintiff alleges Chief Campurciani stated he was not suggesting anything, but that Plaintiff might want to consider retirement if there was "anything to" the complaint. (*Id.* ¶ 62). Plaintiff believed these comments implied a threat that adverse disciplinary action would follow if he did not retire. (*Id.* ¶ 63).

Plaintiff alleges this notification occurred within days of his request for assistance in locating missing body-worn camera evidence. (*Id.* ¶ 47). Based upon this citizen Complaint, an investigation was initiated against Plaintiff. (*Id.* ¶ 49). Plaintiff alleges the citizen complaint was encouraged, leveraged, or revived to manufacture a pretext for discipline and to create justification for his removal. (*Id.* ¶ 50). Plaintiff alleges Chief Campurciani never suggested the issue with the civilian warranted an internal investigation before Plaintiff's alleged protected disclosures. (*Id.* ¶ 51). When confronted with the civilian complaint, Plaintiff claims he

4916-2332-6362, v. 2

demanded a formal internal investigation with the intent of proving the allegations false. (*Id.* ¶ 64).

### III. Plaintiff's Reporting

Plaintiff alleges he reported concerns internally and sought legal guidance regarding the Mayor's alleged traffic stop and the Town Hall after-hours incident, but does not identify when any concerns were raised, to whom they were communicated, or the manner in which they were conveyed. (*Id.* ¶ 41, 45).  On February 5, 2025, Plaintiff requested assistance from an IT employee, Jeff Noble, to locate the alleged missing body-camera footage and metadata associated with the Mayor's traffic stop. (*Id.* ¶ 42).  Plaintiff alleges that after he initiated efforts to locate the alleged missing evidence, Chief Campurciani told Plaintiff "You and I have a problem" with regard to a folder of allegations. (*Id.* ¶ 43).

### IV. Internal Investigations

On February 28, 2025, Plaintiff sat for a three-and-a-half-hour interview with third party investigators from US ISS, where he discussed the suspected cover up, manipulation of evidence, and misuse of authority by senior officials. (*Id.* ¶ 53).  Plaintiff alleges investigators discussed with him an unrelated incident where Chief Campurciani attended a political event for a District Attorney candidate while driving a department vehicle, which was a policy violation. (*Id.* ¶ 54). He claims the Town's posture shifted dramatically after his disclosure and internal affairs interview. (*Id.* ¶ 55).  The day after the interview, prior to any findings being made, Plaintiff was placed on administrative leave; as a result, he claims he was stripped of authority, excluded from operations, and isolated from personnel and information necessary to perform his duties. (*Id.* ¶ 56).  Plaintiff alleges he did not receive copies of investigative materials, witness statements, or policy citations prior to being placed on leave. (*Id.* ¶ 58).  Plaintiff claims he requested an

4

4916-2332-6362, v. 2

internal investigation be initiated and that he be provided access to the investigative file or its contents but was denied access. (*Id.*).

Plaintiff alleges he was placed on indefinite administrative leave while facing pressure from the Town. (*Id.* ¶ 59).  Plaintiff states he had restricted access to information while on administrative leave and stigmatizing allegations about him were allowed to circulate. (*Id.* ¶ 65). Plaintiff also claims he was informed that if he did not retire and discipline were imposed, his separation allowance and retirement benefits could be jeopardized. (*Id.* ¶ 66).  On May 1, 2025, Plaintiff alleges he was forced to retire to protect his pension and livelihood. (*Id.* ¶ 67).  He claims the retirement was not voluntary. (*Id.*).

## STANDARD OF REVIEW

Subject matter jurisdiction is a threshold issue that relates to the court's power to hear a case and must be decided before a determination on the merits of the case.  *Constantine v. Rectors & Visitors of George Mason Univ.,* 411 F.3d 474, 479-80 (4th Cir. 2005).  Generally, a motion under Rule 12(b)(1) raises the question of "whether [the plaintiff] has a right to be in the district court at all and whether the court has the power to hear and dispose of [the] claim."  *Holloway v. Pagan River Dockside Seafood, Inc.,* 669 F.3d 448,452 (4th Cir. 2012).  In ruling on a motion made under Rule 12(b)(1), the Court may "regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."  *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (quotation omitted).

A motion made pursuant to Rule 12(b)(2) challenges a Complaint for lack of personal jurisdiction.  Under Rule 12(b)(2), the Plaintiff must prove by a preponderance of the evidence that the Court can exercise personal jurisdiction.  *See, e.g., Grayson v. Anderson,* 816 F.3d 262,

5

4916-2332-6362, v. 2

267 (4th Cir. 2016); *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993).

To survive a 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, Plaintiff's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). Further, a claim must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556-557).

The Court need not accept legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Doe v. U.S.*, 381 F. Supp. 3d 573, 590 (M.D.N.C. 2019) (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937). While the Court accepts plausible factual allegations in the complaint as true and considers those facts in the light most favorable to a plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F. 3d 175, 180 (4th Cir. 2000). A court is not required to "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Veney v. Wyche*, 293 F. 3d 726, 730 (4th Cir. 2002) (citations and internal quotations omitted).

## **ARGUMENT**

I. **Plaintiff's Duplicative Official Capacity Claims Against Chief Campurciani and Tracey Jerome Should Be Dismissed.**

When a governmental employee is sued in his or her official capacity, the Fourth Circuit has held the claim is against the governmental office the employee holds, rather than the particular

6

4916-2332-6362, v. 2

individual occupying the office.  *Brissett v. Paul*, 141 F.3d 1157 (4th Cir. 1998) (upholding dismissal of claims against defendants in their official capacities as Chiefs of Police, where local government that employed them was named as a party); *see also Armstrong v. City of Greensboro*, 190 F.Supp.3d 450, 463 (2016) ("[D]uplicative claims against an individual in his official capacity when the government entity is also sued may be dismissed."); *Kentucky v. Graham*, 473 U.S. 159, 165-167 (1985) (noting that official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent.").

All of Plaintiff's claims against Chief Campurciani and Ms. Jerome in their official capacities are redundant, unnecessary, and should be dismissed with prejudice.

## II. Plaintiff's Individual Capacity Claims Against Mayor Carney Should Be Dismissed Because Plaintiff Fails to Meet the Pleading Requirements of Rule 8.

A proper pleading under the Federal Rules of Civil Procedure must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). Merely offering "labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  Nor are "naked assertions devoid of further factual enhancement" sufficient.  *Id.*

Plaintiff's Complaint falls woefully short of this standard.  None of Plaintiff's claims are directed at Mayor Carney.  Due to this failure, Defendants cannot identify how Plaintiff alleges Mayor Carney is responsible under any theory of liability.  *See McClain v. Causey*, Case No. 1:20-cv-695, 2021 U.S. Dist. LEXIS 5529, at *14, 2021 (M.D.N.C. Jan. 12, 2021) ("A pleading that vaguely attributes discrete actions to Defendants rather than to a specific party deprives [the defendants] and the court of the opportunity of determining whether there are sufficient facts to make a claim against each Defendant plausible.").

4916-2332-6362, v. 2

Plaintiff has not alleged any involvement at all by Mayor Carney in the violation of his First Amendment rights, or in any decision related to Plaintiff's employment. In fact, Plaintiff has failed to allege any authority of any kind by Mayor Carney over his employment or the alleged facts that support his causes of action. This is unsurprising since the Mayor has no legal authority to engage in employment matters. *See* N.C.G.S. § 160A-67 (defining the Mayor's powers and specifying that, except as otherwise provided by law, the government and general management of the town is vested in the council); *see also* N.C.G.S. § 160A-148 (vesting employment authority over town employees with the Town manager); *Branch v. Guida*, No. 3:09CV417, 2011 WL 1770074, at *4 (W.D.N.C. May 9, 2011) ("North Carolina law requires the town manager to make the ultimate decision on employment decisions."). Mayor Carney's only involvement in this claim is as the subject of the alleged reported bad conduct. Plaintiff argues the Court can infer that Mayor Carney participated in or benefited from the alleged retaliatory response. There are no facts pled that would allow an inference that Mayor Carney participated in the alleged retaliatory response and Defendants are unaware of any legal authority allowing an individual to be named as a Defendant because they benefitted in some way from alleged improper acts by another party.

**III.    Plaintiff Was Not Retaliated Against in Violation of The First Amendment.**

"A plaintiff claiming First Amendment retaliation must demonstrate that: (1) [he] engaged in protected First Amendment activity, (2) the defendants took some action that adversely affected [his] First Amendment rights, and (3) there was a causal relationship between [his] protected activity and the defendants' conduct." *Bhattacharya v. Murray*, 93 F.4th 675, 687–88 (4th Cir. 2024), *cert. denied,* No. 24-296, 2024 WL 4654998 (U.S. Nov. 4, 2024) (internal cites omitted);

4916-2332-6362, v. 2

*see also, Johnson v. Town of Smithfield*, No. 5:23-CV-349-D, 2024 WL 1336466, at *19 (E.D.N.C. Mar. 28, 2024).

### a. There is no Protected Speech.

The Supreme Court has held the "the First Amendment does not protect statements that public employees make 'pursuant to their official duties.'" *Crouse v. Town of Moncks Corner*, 848 F.3d 576, 587 (4th Cir. 2017) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006)). "The critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane v. Franks*, 134 S. Ct. 2369, 2379, 189 L. Ed. 2d 312 (2014). The relevant inquiry concerns the employee's actual, ordinary job duties, *Andrew v. Clark*, 561 F.3d 261, 267 (4th Cir. 2009), to "discern whether the speech at issue occurred in the normal course of those ordinary duties." *Hunter v. Town of Mocksville*, 789 F.3d 389, 397 (4th Cir. 2015) (quoting *Garcetti*, 547 U.S. at 422).

Here, Plaintiff alleges he is responsible for internal and administrative oversight. (D.E. 1, ¶ 16). Further, Plaintiff alleges his duties and responsibilities include "ensuring compliance with body-worn camera policy" "evidence retention requirements" "internal affairs integrity" ensuring "public accountability" and safeguarding "departmental evidence and electronic records." (*Id.* ¶ 23, 24). The reported concerns conveyed by Plaintiff were related to missing evidence, discrepancies associated with record keeping, and adherence to proper protocol. (*Id.* ¶ 32, 33, 35-36). In other words, Plaintiff's "speech" consisted of nothing more than what he was required to report pursuant to his job duties and responsibilities.

### b. There was no Adverse Action.

4916-2332-6362, v. 2

A municipal employer engages in unconstitutional retaliatory conduct under the First Amendment when "it discharges or 'refuses to rehire [the] employee,' or when it makes decisions relating to "promotion, transfer, recall, and hiring based on the exercise of" that employee's free speech rights." *Ridpath v. Bd. of Governors Marshall Univ*. 447 F.3d 292, 316 (4th Cir. 2006) (quoting *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000)). Plaintiff identifies seven actions that constitute adverse actions taken by Defendants. (D.E. 1, ¶ 78). Plaintiff's shotgun approach to identifying an actionable adverse action is fruitless as none of the alleged actions support a claim.

Plaintiff's remaining alleged adverse actions all relate to the initiation of an investigation based upon a citizen complaint and placement of Plaintiff on administrative leave during said investigation. (D.E. 1, ¶¶ 47-50, 52-58). Plaintiff alleges the investigation and his subsequent "forced retirement" was in response, at least in part, to him reporting concerns about Chief Campurciani engaging in improper behavior contrary to his duty as a police officer. (D.E. 1, ¶¶ 46, 52-56, 59-67). Placement of Plaintiff on administrative leave as a result of criticism and concern expressed about his supervisor and leader of the entire police department is entirely reasonable given the circumstances. *See Pone v. Town of Hope Mills*, No. 5:18-CV-558-FL, 2020 WL 96565 at *7 (E.D.N.C. 2020) (the Court determined placement of Plaintiff on administrative leave following serious criticism of supervisor supported the fire department's interest in limiting dissension and discord and promoting efficiency and harmony); *Grutzmacher v. Howard County*, 851 F.3d 332, 345 (4th Cir. 2017) ("Carping criticism and abrasive conduct have no place in a small organization that depends upon common loyalty—harmony among coworkers").

Here, Plaintiff admits he was already involving Town employees in other departments, by seeking assistance from an IT employee. (D.E. 1, ¶ 42). Instead of pursuing the appropriate

4916-2332-6362, v. 2

channels to report suspected improper conduct, Plaintiff began sowing discord throughout the Town by involving employees outside of leadership and management and spreading allegations about misconduct at the highest level. The Town's interest in promoting efficiency and teamwork in a department where safety is of the utmost importance far outweighs Plaintiff's First Amendment rights. *See Pone*, 2020 WL at *7 (Plaintiff's First Amendment Retaliation claim was dismissed where the employer's interests outweighed the Plaintiff's First Amendment rights).

### c. There was no Causal Relationship

"The causation requirement is 'rigorous' in that the protected expression must have been the 'but for' cause of the adverse employment action alleged." *Ridpath*, 447 F.3d at 318 (citing *Huang v. Bd. of Governors*, 902 F.2d 1134, 1140 (4th Cir. 1990)). While the law prohibits government officials from engaging in retaliatory acts in response to speech in fear of a chilling effect, "not every reaction made in response to an individual's exercise of his First Amendment right to free speech is actionable retaliation." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000) (*quoting DiMeglio v. Haines,* 45 F.3d 790, 806 (4th Cir. 1995). With respect to showing the retaliatory action adversely affected constitutionally protected speech, Plaintiff must show the conduct would deter a person of ordinary firmness from the exercise of First Amendment rights. *Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005).

Plaintiff pleads and argues in conclusory fashion that Defendants retaliated against him in response to his protected speech. Plaintiff has pled no facts except for speculative and unsupported allegations that all conduct he opposed was in response to his protected speech. This falls short of the standard, which requires pleading that the speech was the "but for" cause of the alleged adverse employment action. *Porter v. Bd. of Trs. Of N.C. State Univ.*, 72 F.4th 573, 584 (4th Cir. 2023).

4916-2332-6362, v. 2

Plaintiff's Complaint contains allegations which could lead a reasonable fact finder to conclude the investigation and administrative leave were related to conduct separate and apart from his speech. This Complaint stands in stark contrast to *Ridpath,* where the 4th Circuit found sufficient pleadings to establish causation. *See Ridpath*, 447 F.3d at 318-19 (Plaintiff alleged there was testimony that the plaintiff was terminated due to his speech and that he was subsequently terminated for said speech).

Importantly, the timeline alleged in Plaintiff's Complaint does not support causation. The citizen complaint that resulted in an investigation into Plaintiff was received in January of 2025. (D.E. 1, ¶ 48). Plaintiff then alleges he requested assistance from an IT employee, Jeff Noble, to locate information associated with the traffic stop on February 5, 2026. (*Id.* ¶ 42). Plaintiff does not allege when he reported "improper governmental activities" to "Town leadership, Human Resources, and the Town Attorney." (*Id.* ¶¶ 155, 158). Instead, he generally states that he was engaged in protected speech. On February 6, 2025, Chief Campurciani informed Plaintiff of the citizen complaint, suggesting if there were anything to the complaint, Plaintiff might want to consider retirement. (*Id.* ¶¶ 60-62). Plaintiff does not allege the substance of the citizen complaint; however, Chief Campurciani's response suggests the allegations were treated as serious, given his expressed concern regarding Plaintiff's continued employment.

According to Plaintiff's Complaint, in response to the citizen complaint, the Town engaged an independent third party to investigate. (*Id.* ¶ 53). The Court is not required to accept allegations, nor should it, which are not grounded in reason or supported by fact. Plaintiff's allegation that the investigation and subsequent administrative leave were in response to his protected speech is unsupported by his allegations. The Town received the citizen complaint a month before he engaged in any "speech" and the only "speech" he engaged in prior to being informed of the

12

Case 5:26-cv-00025-MEO-DCK    Document 6    Filed 04/13/26    Page 12 of 28
4916-2332-6362, v. 2

civilian complaint was his attempts to locate evidence through Jeff Noble, an IT employee. (*Id.* ¶ 42). It is unclear if Plaintiff is suggesting Mr. Noble relayed his concerns to Town officials or if Mr. Noble was in anyway involved in the alleged retaliation.[1] The speculative nature of Plaintiff's "protected speech" and how it occurred should sever any causal connection to the speech and subsequent conduct.

## IV. Plaintiff's Fourteenth Amendment "Stigma-Plus" Claim Fails.

To establish a protected liberty interest and proceed on his Fourteenth Amendment claim, Plaintiff must plead facts sufficient to show the charges against him "(1) placed a stigma on his reputation; (2) were made public by the employer; (3) were made in conjunction with his termination or demotion; and (4) were false." *Sciolino v. City of Newport News, Va.*, 480 F.3d 642, 646 (4th Cir. 2007). In such instances, a hearing is necessary "to provide the person an opportunity to clear [her] name." *Board of Regents v. Roth*, 408 U.S. 564, 573 n.12 (1972). "Once a person has cleared his name at a hearing, his employer, of course, may remain free to deny his future employment for other reasons." *Id*. "If the public employee can establish a protected liberty interest under this framework, the employee is entitled to due process, which in this context involves a 'name-clearing hearing.'" *Harrell v. City of Gastonia*, 392 F. App'x 197, 203 (4th Cir. 2010). The Due Process Clause "'is not a guarantee against incorrect or ill-advised personnel decisions.'" *Sciolino,* 480 F.3d at 649 (quoting *Bishop v. Wood,* 426 U.S. 341, 350, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976)). Rather, "due process requires simply the opportunity to be heard 'at a

---

[1] Defendants ask the Court take judicial notice that Mr. Noble has a pending claim before this Court, and his Amended Complaint contains no allegation of receipt of protected speech from Plaintiff or involvement with relaying Plaintiff's concerns. *See Noble v. Town of Mooresville, N.C.*, No. 5:26-cv-00006-SCR-DCK, Amended Complaint, D.E. 10 (W.D.N.C. Apr. 2, 2026).

4916-2332-6362, v. 2

meaningful time and in a meaningful manner.'" *Harrell*, 392 F. App'x at 203 (citing *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)).

Plaintiff's Due Process claim fails because the Complaint contains no allegation that any Defendant <u>publicly</u> accused him of allegedly stigmatizing conduct. In *Sciolino*, the Fourth Circuit held "that a *purely private* communication of the reasons for an employee's termination cannot form the basis for a due process claim, because there is no possibility of the allegation affecting the individual's Fourteenth Amendment liberty interests." *Sciolino*, 480 F.3d at 647 (emphasis in original) (relying on *Bishop v. Wood* 426 U.S. 341, 348, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976)).

Plaintiff alleges "stigmatizing statements and accusations were communicated within MPD, to Town leadership, through official Internal Affairs and investigative channels, and to individuals involved in employment and disciplinary decision-making." (D.E. 1, ¶ 87). This is insufficient to constitute publication under the Fourteenth Amendment framework. *See Elhady v. Kable*, 993 F.3d 208, 225 (4th Cir. 2021) ("intragovernmental dissemination of [] information to other federal agencies and components, to be used for federal law enforcement purposes, is not 'public disclosure' for purposes of a stigma-plus claim."; *Smith v. Wright*, No. 2:19cv559, 2021 WL 11474540, at *6 (E.D.Va. 2021) (forwarding stigmatizing memorandum to the City's Human Resources Director fails to sufficiently allege publication); *Willis v. City of Virginia Beach*, 90 F.Supp.3d 597, 617 (E.D.Va. 2015) (allegations of internal communications, private conversations, and meetings not attended by the public did not sufficiently plead publication for a Due Process claim).

In addition, Plaintiff cannot satisfy the required element that the statements purportedly placing a "stigma" on his reputation were made <u>in conjunction with his termination or demotion</u>. *Sciolino*, 480 F.3d at 646. Throughout his Complaint, Plaintiff characterizes his separation as a

4916-2332-6362, v. 2

"forced retirement." (D.E. 1, ¶¶ 67-68, 78, 80, 89, 98, 109, 123, 139, 165). Plaintiff's decision to retire rather than face possible termination "'effectively dispose[s] of any liberty interest claim he might assert.'" *Harrell*, 392 F. App'x at 203 (citing *Stone v. Univ. of Md. Med. Sys. Corp.,* 855 F.2d 167, 172–74 n. 5 (4th Cir. 1988)) (noting resignation can be voluntary "even where the only alternative to resignation is facing possible termination for cause, unless the employer actually lacked good cause to believe that grounds for termination existed").

## V.      Plaintiff's Fourteenth Amendment Property Interest Claim Fails.

"The procedural safeguards of the due process clause extend to plaintiff's continued employment only if [he] had a property interest in that employment." *Pittman v. Wilson County,* 839 F.2d 225, 226 (4th Cir. 1988). "[I]n order to possess a property interest in one's employment ... 'a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.'" *Pittman,* 839 F.2d at 227 (quoting *Bd. of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548(1972)). "Under North Carolina law, subject to a few well-defined exceptions, absent some form of contractual agreement between an employer and employee establishing a definite period of employment, the employment is presumed to be an 'at-will' employment, terminable at the will of either party, irrespective of the quality of performance by the other party." *Pittman,* 839 F.2d at 227.

North Carolina is an employment-at-will state. *Kurtzman v. Applied Analytical Industries, Inc.*, 347 N.C. 329, 331, 493 S.E.2d 420, 422 (1997). The relationship between an employee and his employer is presumed to be terminable at will unless there is a contractual agreement establishing a definite term of employment. *Soles v. City of Raleigh Civil Service Comm.*, 345 N.C. 443, 480 S.E.2d 685, *rehearing denied*, 345 N.C. 761, 485 S.E.2d 299 (1997).

15

4916-2332-6362, v. 2

"Further, one whose contract for employment is terminable at will has no property interest in the employment which may form the basis for a denial of due process claim." *Buchanan v. Hight*, 133 N.C.App. 299, 303, 515 S.E.2d 225, 228 (Ct.App. 1999) (citing *Peele v. Provident Mut. Life Ins. Co.*, 90 N.C.App. 447, 451, 368 S.E.2d 892, 894-95, *disc. Review denied*, 323 N.C. 366, 373 S.E.2d 547 (1988).

Plaintiff's Complaint contains no allegation that there was a contractual agreement establishing a definite term of employment. Therefore, Plaintiff must be deemed terminable at will, in which case, he has no property interest in his employment and cannot proceed with a due process claim.

**VI. Individual Defendants Are Entitled to Qualified Immunity as to Plaintiff's Constitutional Claims.**

Even if Defendants had violated Plaintiff's constitutional rights, which they did not, Plaintiff's claims are barred by qualified immunity. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Officials who are sued for civil damages are entitled to qualified immunity unless (1) the Complaint sufficiently alleges a violation of a constitutional right, and (2) the right at issue, defined at the appropriate level of generality, was "clearly established" at the time of the alleged misconduct. *Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs.*, 597 F.3d 163, 169 (4th Cir. 2010). Notably, the right at issue must be defined with specificity. *City of Escondido, Cal v. Emmons,* ---U.S.----, 139 S.Ct. 500, 503, 202 L.Ed.2d 455 (2019).

Qualified immunity "gives ample room for mistaken judgments" and protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341,

4916-2332-6362, v. 2

343, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992).

In the First Amendment retaliation setting, Defendants are unaware of any Fourth Circuit case where our courts have ruled that a plaintiff has a clearly established constitutional right to not be placed on paid administrative leave pending an investigation initiated based upon a complaint from a citizen which was received prior to Plaintiff's alleged protected activity. Nor are Defendants aware of any Fourth Circuit case where a court has found a plaintiff stated a claim for due process violations under a stigma-plus analysis where the plaintiff retired, and the alleged stigmatizing remarks were not publicized.

### VII. Plaintiff Fails to State a Cognizable *Monell* Claim Against the Town.

Since Plaintiff cannot establish liability under § 1983, His *Monell* claim must necessarily fail. *See, e.g., Hinkle v. City of Clarksburg,* 81 F.3d 416, 420 (4th Cir. 1996); *Young v. City of Mt. Ranier,* 238 F.3d 567, 579 (4th Cir. 2001) ("The law is quite clear...that a section 1983 failure to train claim cannot be maintained against a governmental employer in a case where there is no underlying constitutional violation by the employee."). Significantly, a municipality cannot "be held liable under § 1983 on a *respondeat superior* theory," as liability attaches to the Town and the Defendants in their official capacities only if the alleged deprivation of Plaintiff's constitutional rights was caused by an official Town policy or custom. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2035-2038 (1978).

To properly allege a *Monell* claim under § 1983, Plaintiff "must plead (1) the existence of an official policy or custom; (2) that the policy or custom is fairly attributable to the municipality;

17

4916-2332-6362, v. 2

and (3) that the policy or custom proximately caused the deprivation of a constitutional right." *Jordan ex rel. Jordan v. Jackson,* 15 F.3d 333, 338 (4th Cir. 1994).

A municipal policy may arise: "(1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority;" or "(3) through an omission, such as a failure to properly train officers, that manifest[s] deliberate indifference to the rights of citizens." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (internal citation omitted). Conversely, a municipal custom arises if a practice is so "persistent and widespread" and "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Monell*, 436 U.S. at 691, 98 S.Ct. 2018. The policies or customs must be the "moving force" behind the constitutional violation. *Id.*, 436 U.S. at 694, 98 S.Ct. at 2037-38. Plaintiff does not plead, even in conclusory fashion, that an alleged constitutional deprivation arose pursuant to an <u>official, written Town policy</u>, such as a written directive, ordinance or regulation. Accordingly, Plaintiff has not alleged an express municipal policy existed that caused the claimed deprivations, and cannot proceed under the first prong of *Monell*.

Nor does Plaintiff adequately plead that liability exists for a widespread illegal custom or usage under *Monell*, which requires him to allege facts sufficient to show (1) the Town had "'actual or constructive knowledge' of the custom and usage by its responsible policymakers,' and (2) that there was a failure by those policymakers, 'as a matter of specific intent or deliberate indifference,' to correct or terminate the improper custom and usage." *Randall v. Prince George's Cnty., Md.,* 302 F.3d 188, 210 (4th Cir. 2002) (quoting *Spell,* 824 F.2d at 1391).

Plaintiff simply makes repeated references to "policies, customs, and practices" as a collective whole, without support. It is well settled that 'isolated incidents' of unconstitutional conduct by subordinate employees are not sufficient to establish a custom or practice for § 1983

4916-2332-6362, v. 2

purposes." *Lytle*, 326 F.3d at 474 (quoting *Carter v. Morris*, 164 F.3d 215, 220 (4th Cir. 2003). Rather, it is only where a history of <u>widespread abuse of constitutional rights</u> exists that knowledge can be imputed to a municipality. *Monell*, 436 U.S. at 691.

Prevailing under *Monell* requires a Plaintiff to "point to a 'persistent and widespread practice [] of municipal officials,' the 'duration and frequency' of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their 'deliberate indifference.'" *Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 402 (4th Cir. 2014) (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1386-91 (4th Cir. 1987)). "Sporadic or isolated violations of rights will not give rise to *Monell* liability; only 'widespread or flagrant' violations will." *Id.* 767 F.3d at 403 (citing *Spell*, 824 F.2d at 1387). "[P]roof of a single incident of the unconstitutional activity charged is not sufficient to prove the existence of a municipal custom." *Semple v. City of Moundsville*, 195 F.3d 708, 713–14 (4th Cir. 1999) (citation omitted); *see also Howard v. City of Durham*, 68 F.4th 934, 954 (4th Cir. 2023) ("[b]ut fatally to his claim, Howard offers evidence of only a single incident of unconstitutional activity: the incident in this very case. And 'proof of a single incident of the unconstitutional activity charged is not sufficient to prove the existence of a municipal custom' ") (citing *Semple*, 195 F.3d at 713–14). Rather, there must be "numerous particular instances of unconstitutional conduct to establish a custom or practice." *Misjuns v. City of Lynchburg*, 139 F.4th 378, 386 (4th Cir. 2025) ("[t]he only facts that Misjuns alleged are regarding his own termination, and a custom cannot be established by proof alone of the single violation charged.... Misjuns has alleged none other than his own experience.").

Plaintiff has offered no facts or allegations supporting the existence of a widespread custom, practice, or policy, aside from his own employment action. Such allegations are plainly

4916-2332-6362, v. 2

insufficient to establish a claim under *Monell*.  *See Johnson v. Baltimore City, Maryland*, 163 F.4th 808, 823-24 (4th Cir. 2026) (Court found that allegations of "a custom of discrimination" and "an institutional practice or custom … to cover up officer misconduct, discrimination and retaliation against fellow officers who stand up against [] for violations of their civil rights.").  The allegations insufficient to state a claim in *Johnson* are of the same quality and specificity as the allegations in Plaintiff's Complaint. "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985).  No such proof can be gleaned from Plaintiff's Complaint.  While Plaintiff alleges the alleged unconstitutional activity is the result of an unconstitutional policy/custom, there is no allegation of fact or proof to support that contention.

### VIII.   Plaintiff's Civil Conspiracy Claim is Barred.

Plaintiff's civil conspiracy claim must fail since he has failed to plead a claim under § 1983, as noted above.  There must be an underlying Constitutional deprivation to prevail on a conspiracy claim under § 1983.  *See Nance v. City of Albemarle, North Carolina*, 520 F.Supp. 3d 758, 801 (M.D.N.C. 2021) (dismissing § 1983 civil conspiracy claim where plaintiffs "failed to plausibly allege" constitutional deprivations); *Byrd v. Hopson*, 265 F.Supp. 2d 594, 599 (W.D.N.C. 2003) (Under North Carolina law, "there is no independent cause of action for civil conspiracy; the claim can arise only where there is an underlying claim for unlawful conduct.").

To plead a cognizable civil conspiracy claim under § 1983, Plaintiff "must present evidence that [Defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [Plaintiff's] deprivation of a constitutional right." *Hinkle v. City of*

4916-2332-6362, v. 2

*Clarksburg. W.Va.*, 81 F.3d 416, 421 (4ᵗʰ Cir. 1996) (citing *Hafner v. Brown*, 983 F.2d 570, 577 (4ᵗʰ Cir. 1992)). This burden is "weighty." *Penley v. McDowell Cty. Bd. of Educ.*, 876 F.3d 646, 658 (4th Cir. 2017) (internal quotation marks omitted) (quoting *Hinkle*, 81 F.3d at 421). "While they need not produce direct evidence of a meeting of the minds, [plaintiff] must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." *Hinkle*, 81 F.3d at 421. The evidence "must, at least, reasonably lead to the inference that [the defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Id.* "[R]ank speculation and conjecture" are not enough. *Id.* at 422. Here, Plaintiff's conspiracy allegations amount to precisely the sort of "rank speculation and conjecture" our courts deem wholly insufficient to establish a cognizable claim.

Even if Plaintiff had sufficiently pled a claim under 42 U.S.C. § 1983 for constitutional violations, the intracorporate conspiracy doctrine still dooms this claim. This doctrine, which applies to municipalities, "recognizes that a corporation cannot conspire with its agents because the agents' acts are the corporation's own." *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 352 (4ᵗʰ Cir. 2013); *Fox v. City of Greensboro*, 807 F.Supp. 2d 476, 499 (M.D.N.C. 2011). Specifically, "there is no unlawful conspiracy when officers within a single corporate entity consult among themselves and then adopt a policy" because two agents of the same legal entity are not considered to be "two or more separate people" forming an agreement. *Ziglar v. Abbasi*, 582 U.S. 120, 153 (2017) (citing *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 769-771 (1984)).

To put it succinctly, "a conspiracy between a corporation and its agents, acting within the scope of employment, is a legal impossibility." *Marmott v. Md. Lumber Co.*, 807 F.2d 1180, 1184 (4th Cir. 1986) (upholding district court's ruling that plaintiff failed to allege a conspiracy because

4916-2332-6362, v. 2

the complaint only named the company and its employees as conspirators).  Plaintiff's threadbare civil conspiracy claim complains of "conspiratorial conduct" purportedly engaged in solely by Defendants, all of whom he contends are either officials or employees of the Town.  (DE 1, ¶¶ 114-124).

### IX.  Plaintiff's Claim for Wrongful Discharge in Violation of North Carolina Public Policy Fails Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6).

#### a. North Carolina Does Not Recognize A Claim for Constructive Discharge.

"As a general rule, an employee-at-will has no claim for relief for wrongful discharge." *Tompkins v. Allen*, 107 N.C. App. 620, 622, 421 S.E.2d 176, 178 (1992).  In other words, absent limited exceptions, an employee "could generally be discharged for arbitrary, irrational, indifferent, or illogical reasons without any legal recourse."  *Woods v. City of Wilmington*, 125 N.C. App. 226, 229, 480 S.E.2d 429, 432 (1997).  One "narrow exception" to the at-will doctrine arises when an employee is terminated for a purpose in contravention of public policy. *Id.* at 320, 551 S.E.2d at 183; *Gibson v. Corning Inc.*, No. 5:14-CV-105-BO, 2015 WL 1880188, at *9 (E.D.N.C. Apr. 13, 2015).

Both North Carolina state courts and federal courts applying state law have repeatedly declined to expand "the public policy exception to the employment-at-will doctrine to include claims of constructive discharge."  *Mitchell v. Bandag, Inc.*, 147 F. Supp. 2d 395, 400 (E.D.N.C. 1998) (citing *Graham v. Hardee's Food Systems, Inc.*, 121 N.C. App. 382, 385, 465 S.E.2d 558, 560 (1996)); *Jones v. Duke Energy Corp.*, 43 F. App'x 599, 600 (4th Cir. 2002); *DeWitt v. Mecklenburg County,* 73 F. Supp. 2d 589, 599 n. 6 (W.D.N.C. 1999).

Throughout his Complaint, Plaintiff characterizes his separation as a "forced retirement." (D.E. 1, ¶¶ 67, 68, 78, 80, 89, 98, 109, 123, 139, 165).  Plaintiff's attempts to characterize the

4916-2332-6362, v. 2

reason he left as being forced or coerced to retire against his will cannot save this cause of action, as it is simply not recognized by our courts.[2]

> **b. Plaintiff's State Law Claim for Wrongful Discharge Is Barred Because Defendants Are Entitled to Governmental Immunity.**

Second, even if North Carolina law did recognize such a claim, the Town, and the Defendants named in their official capacities are entitled to governmental immunity. "Municipalities in North Carolina are immune from liability for their negligent acts arising out of governmental activities unless the municipality waives such immunity by purchasing liability insurance." *Anderson v. Town of Andrews,* 127 N.C. App. 599, 600, 492 S.E.2d 385, 386 (1997); *see also Patrick v. Wake Cnty. Dep't of Human Servs.,* 188 N.C. App. 592, 655 S.E.2d 920, 923 (2008).

"Governmental immunity is immunity from suit – not just immunity from having to pay damages at the conclusion of years of litigation." *Arrington v. Martinez*, 215 N.C. App. 252, 263, 716 S.E.2d 410, 417 (2011) (citing *Craig v. New Hanover County Bd. of Educ.*, 363 N.C. 334, 337-38, 678 S.E.2d 351, 354 (2009)).  In the absence of some statute that subjects them to liability, the State, its municipalities, and officers and employees sued in their official capacities, are shielded from tort liability when discharging or performing a governmental function.  *Thompson v. Town of Dallas, et al.*, 142 N.C. App. 651, 654, 543 S.E.2d 901, 904 (2001).

In this case, governmental immunity bars Plaintiff's wrongful discharge claim as <u>Plaintiff did not allege the Town waived immunity by purchase of insurance</u>.  *See generally*, (DE 1). "Because it is a jurisdictional matter, a plaintiff's complaint must affirmatively demonstrate the

---

[2]Even if North Carolina did recognize claims for constructive discharge, a claim for wrongful discharge is only proper against the plaintiff's <u>employer</u>, which in this case, was the <u>Town</u>, not any of the individually named Defendants. *See Houpe v. City of Statesville*, 128 N.C. App. 334, 344 (1998).

23

4916-2332-6362, v. 2

basis for the waiver of immunity." *Arrington v. Martinez*, 215 N.C. App. at 263, 716 S.E.2d at

417. A waiver of governmental immunity must be expressly pled in the complaint. *Clark v. Burke Cty.*, 117 N.C. App. 85, 88, 450 S.E.2d 747, 748 (1994). "Absent such an allegation, the complaint

fails to state a cause of action.'" *Can Am S., LLC v. State*, 234 N.C. App. 119, 125, 759 S.E.2d

304, 309 (2014) (internal citation omitted).

Further, the Town <u>has not waived immunity by purchase of insurance</u> applicable to this

claim.[3] *See* (Ex. 1 - McKenzie Aff.); (Ex. 2 - Policy). The Town only had one insurance policy in

effect during the time period applicable to this lawsuit. *Id*. at ¶¶ 3-5. That policy contains a "non-

waiver of governmental immunity endorsement" which indicates "[y]our purchase of this policy

is not a waiver, under [N.C.G.S.] Section 160A-485 or [N.C.G.S.] Section 153A-435 or any

amendments to those sections, of any governmental immunity that would be available to any

insured had you not purchased this policy." (Ex. 2, p. 89).

North Carolina courts, including our federal district courts, have routinely recognized that

purchasing insurance with a non-waiver provision such as the one in the Town's policy does not

waive governmental immunity. *Craven v. Novelli*, 661 F. Supp. 3d 430, 454 (W.D.N.C. 2023)

(analyzing the same provision in the Town of Mooresville's policy and finding "the Town has

retained its governmental immunity from liability[.]"); s*ee also Evans v. Chalmers*, 703 F.3d

636, 656 (4th Cir. 2012) (citing North Carolina authority). As this Court previously held in

*Craven*, the non-waiver provision contained in the Town's policy clearly establishes that the

---

[3] The Town has attached a true and accurate copy of the relevant general liability policy. *See* (Ex. 1); (Ex. 2). The insurance policy submitted and authenticated by the Affidavit of Ms. McKenzie may properly be considered on a motion to dismiss for lack of jurisdiction. *Masselli & Lane, PC v. Miller & Schuh, PA,* 215 F3d 1320 (4th Cir. 2000).

4916-2332-6362, v. 2

purchase of liability coverage does not constitute a waiver of available governmental immunity defenses.

**X.    Plaintiff's North Carolina Whistleblower Act Claim is Not Applicable to These Defendants.**

N.C.G.S. § 126-5(a) provides that the chapter only applies to the following employees of local entities:

a. Area mental health, developmental disabilities, and substance abuse authorities, except as otherwise provided in Chapter 122C of the General Statutes.
b. Local social services departments.
c. County health departments and district health departments.
d. Local emergency management agencies that receive federal grant-in-aid funds.

N.C.G.S. § 126-5(a)(2).

It is well established the North Carolina Whistleblower statute does not apply to police officers of Towns. *See McLean v. Town of Carolina Beach,* 5 Fed. Appx. 304, 305 (4th Cir. 2001) ("McLean's claim under the "whistleblower" statute is also without merit, as local police officers are not within the group of employees for whom the statute provides protection."); *Conran v. New Bern Police Dep't*, 122 N.C.App. 116, 468 S.E.2d 258, 259 (N.C.App. 1996) (the Court holds that a police officer for a Town is not a covered employee under N.C.G.S. § 126-5(a)(2), and therefore not covered under Chapter 126); *Johnson v. Forsyth County*, 227 N.C.App. 276, 279-80 (N.C.App. 2013) (Court notes that the Whistleblower statute applies only to "State employees" and those enumerated under N.C.G.S. § 126-5). Therefore, the Whistleblower statute is not applicable to Plaintiff as a Town employee.

<u>**CONCLUSION**</u>

WHEREFORE, Defendants respectfully request that their Motion to Dismiss be GRANTED and that each of Plaintiff's claims be DISMISSED WITH PREJUDICE pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6).

4916-2332-6362, v. 2

This the 13th day of April, 2026.

**CRANFILL SUMNER LLP**

By: /s/ *Jake W. Stewart*
   Jake W. Stewart, NC Bar #51157
   Ariella Z. Walsh, NC Bar #55109
   *Attorneys for Defendants*
   P.O. Box 30787
   Charlotte, NC 28230
   Telephone (704) 332-8300
   Facsimile (704) 332-9994
   jstewart@cshlaw.com
   awalsh@cshlaw.com

4916-2332-6362, v. 2

## CERTIFICATION REGARDING USE OF ARTIFICIAL INTELLIGENCE

Pursuant to the June 18, 2024 Standing Order of this Court In Re: Use of Artificial Intelligence, 3:24-mc-104, counsel, by signing above, submits the following certification regarding Defendant's Memorandum of Law in Support of Defendant's Motion to Dismiss.

1. No artificial intelligence was employed in doing the research for the preparation of this Memorandum, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg, as well as Google and Google Scholar;

2. Every statement and every citation to an authority contained in this Memorandum has been checked by the undersigned as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 13th day of April, 2026.

CRANFILL SUMNER LLP

BY:    /s/ *Jake W. Stewart*
Jake W. Stewart, NC Bar #51157
Ariella Z. Walsh, NC Bar #55109
*Attorneys for Defendants*
P.O. Box 30787
Charlotte, NC 28230
Telephone (704) 332-8300
Facsimile (704) 332-9994
jstewart@cshlaw.com
awalsh@cshlaw.com

4916-2332-6362, v. 2

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that the undersigned has this day electronically filed the foregoing ***MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT*** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

C. Christopher Adkins
Adkins Law, PLLC
9620 Sherrill Estates Road
Huntersville, NC 28078
Telephone: (704) 274-5677
Facsimile: (877) 208-7577
Emails: chris@huntersvillelawyer.com
*Attorney for Plaintiff*

Christerfer R. Purkey
Rech Law, P.C.
18125 W. Catawba Avenue
Cornelius, NC 28031
Telephone: (704) 228-2790
Facsimile: (704) 909-7410
Email: cpurkey@rechlaw.com
*Attorney for Plaintiff*

This the 13th day of April, 2026.

**CRANFILL SUMNER LLP**

BY:   /s/ *Jake W. Stewart*
Jake W. Stewart, NC Bar #51157
Ariella Z. Walsh, NC Bar #55109
*Attorneys for Defendants*
P.O. Box 30787
Charlotte, NC 28230
Telephone (704) 332-8300
Facsimile (704) 332-9994
jstewart@cshlaw.com
awalsh@cshlaw.com

.

28

4916-2332-6362, v. 2