IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
Statesville Division

| | |
|---|---|
| Frank Falzone, | ) |
| | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) Civil Action No. 5:26-CV-00025 |
| Town of Mooresville, North Carolina; | ) |
| Chief Ron Campurciani, in his official and individual | ) |
| capacities; Tracey Jerome, in her official and | ) |
| individual capacities; Chris Carney, in his individual | ) |
| capacity; | ) |
| | ) |
| Defendants. | ) |
| | ) |

**PLAINTIFF'S MEMORANDUM OF LAW IN FURTHER OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

**NOW COMES** Plaintiff, **Frank Falzone**, by and through the undersigned counsel and

pursuant to Local Rule 7.1, Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6), and files this

Memorandum of Law in Support of Plaintiff's Opposition to Defendant's Motion to Dismiss

Plaintiff's Complaint.

**STATEMENT OF THE CASE**

That Plaintiff commenced this lawsuit on February 9th, 2026, bringing claims against

Defendants under 42 U.S.C. § 1983 alleging Count 1) First Amendment Retaliation; Count 2)

Fourteenth Amendment Due Process –stigma plus; Count 3) Fourteenth Amendment Due Process

as to property interest; Count 4) *Monell* claim; Count 5) Civil Conspiracy; Count 6) Wrongful

Discharge in Violation of North Carolina Public Policy; and Count 7) North Carolina

Whistleblower Act. *See generally,* Compl. ¶, *Falzone v. Town of Mooresville, N.C.*, No. 5:26-cv-00025-MEO-DCK (W.D.N.C. Feb. 9, 2026), ECF No. 1.

On April 13th, 2026, filed a Motion to Dismiss in Lieu of Answer. See generally *Defs.' Mot. to Dismiss in Lieu of Answer. Falzone v. Town of Mooresville, N.C.*, No. 5:26-cv-00025-MEO-DCK (W.D.N.C. Apr. 13, 2026), ECF No. 5. Now, Defendant timely files Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss Plaintiff's Complaint.

## STATEMENT OF RELEVANT FACTS

The Complaint alleges that Plaintiff Frank Falzone, a command-level law-enforcement officer with nearly three decades of service, discovered serious irregularities involving a late-night traffic stop tied to Mayor Chris Carney (hereinafter Mayor Carney), the disappearance or suppression of body-worn camera evidence, the misclassification of CAD records, and the mishandling or suppression of Town Hall security evidence. Complaint ¶¶ 26-40. It further alleges that when Plaintiff took steps to preserve and escalate those concerns—including to individuals outside ordinary police channels, to Town leadership, through HR and legal channels, and to outside investigators—Defendants did not investigate the underlying misconduct. They turned the discipline inward, resurrected an old complaint, placed him on administrative leave, stripped him of authority, circulated stigmatizing accusations, denied him meaningful process, and forced him into retirement under threat to his pension and livelihood. Id. ¶¶ 41-68, 73-81. That is not a bare legal conclusion. It is a plausible retaliation narrative supported by factual allegations more than sufficient to survive a motion to dismiss.

In Plaintiff's command position, he alleges that he supervised officers and command staff, enforced departmental policies, oversaw internal affairs and disciplinary matters, reviewed

citizen complaints, protected departmental evidence and electronic records, and helped ensure compliance with constitutional policing standards and accountability obligations. Id. ¶¶ 22-24.

The Complaint centers on two interrelated incidents involving Mayor Carney. First, Plaintiff alleges around December 2024 he was approached by Captain Russell Clark, who reported a late-night January 30, 2024, traffic stop involving Mayor Carney and Chief Campurciani. Complaint ¶¶ 26-28. Clark allegedly reported that he activated his body-worn camera during the encounter, but when Plaintiff later tried to verify the incident, he found that the CAD record had been classified as an "assist public" rather than a traffic stop or assist to another agency, and that no usable body-worn camera recording existed despite metadata showing activation and deactivation. Id. ¶¶ 29-32. Plaintiff alleges those acts reasonably suggested manipulation or suppression of records designed to shield the Mayor from scrutiny. Id. ¶ 33.

Second, Plaintiff alleges that he learned of reports that Mayor Carney had been inside Town Hall after hours with another person triggering alarms, and police had responded. Complaint ¶¶ 34-40.  Surveillance footage, access-control logs, and alarm data existed but were not handled like ordinary security evidence; instead, senior Town officials and police leadership discouraged scrutiny, minimized the event, and delayed or controlled review of the evidence. Id. ¶¶ 37-39. The Complaint then alleges that Plaintiff took steps to ensure these matters were addressed lawfully. He alleges he raised concerns internally, sought legal guidance, requested IT assistance to locate and preserve missing body-camera data, raised concerns to Town leadership, and later made protected disclosures to outside investigators regarding suspected cover-up, evidence manipulation, and abuse of authority. Complaint ¶¶ 41-45, 53, 73-76.

According to Plaintiff, retaliation followed swiftly. He alleges that after he requested IT assistance on February 5th, 2025, Chief Campurciani confronted him stating, "You and I have a problem," while referencing a folder of allegations. Complaint ¶ 43. A previously addressed citizen complaint from an unrelated March 2024 civil dispute was weaponized as disciplinary pretext shortly after his protected reporting activity. *Id*. ¶¶ 47-51. After meeting with outside investigators and disclosed the suspected cover-up, he was placed on administrative leave the next day, stripped of meaningful authority, excluded from operations, denied access to investigative materials, and prevented from meaningfully defending himself. *Id*. ¶¶ 52-58.

Defendants increased pressure on Plaintiff to retire. On February 6th, 2025, Chief Campurciani suggested—twice—that Plaintiff should submit retirement paperwork. Complaint ¶ 62. Plaintiff demanded a formal internal affairs process. *Id*. ¶ 64. Town representatives conveyed that if he did not retire and discipline were imposed, his separation allowance and retirement benefits would be jeopardized. *Id*. ¶ 66. Faced with indefinite leave, reputational destruction, a predetermined disciplinary process, threats to his earned benefits, Plaintiff was forced to retire on or about May 1, 2025, to protect his pension and livelihood. *Id*. ¶ 67. These events were not isolated or accidental. Town Manager Jerome and Chief Campurciani were final policymakers with authority over personnel, discipline, investigations, and administrative leave; they ratified and directed the conduct at issue; Mayor Carney had significant influence and personally benefited from the suppression of evidence; and that the Town had customs of protecting politically connected officials, suppressing or manipulating inconvenient evidence, and retaliating against employees who refused to go along. Complaint ¶¶ 18-20, 69-71, 105-111, and 114-124. The allegations are detailed factual averments that must be accepted as true for purposes of Rule 12(b)(6).

# STANDARD OF REVIEW

Motions brought pursuant to Rule 12(b)(1) challenges the Court's subject matter jurisdiction. As federal courts are courts of limited jurisdiction, the party invoking federal jurisdiction bears the burden of establishing its existence. *Kerns v. United States*, 585 F.3d 187, (4th Cir. 2009). Rule 12(b)(1) does not permit dismissal merely because a defendant disputes the legal sufficiency of a federal claim. Where a complaint pleads claims arising under federal law, whether the plaintiff has alleged a viable cause of action goes to the merits under Rule 12(b)(6), not to the Court's power to hear the case under Rule 12(b)(1). See *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 505–06 (4th Cir. 2015). Thus, at the pleading stage, the Court must be careful not to conflate an asserted failure on the merits with an absence of subject matter jurisdiction.

A motion under Rule 12(b)(2) tests whether the Court may properly exercise personal jurisdiction over the defendants. Absent an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction. The Court must construe all relevant allegations and available evidence in the light most favorable to the plaintiff, assume credibility, and draw all reasonable inferences in favor of jurisdiction. See *Mylan Labs., Inc. v. Akzo, N.V.,* 2 F.3d 56, 60 (4th Cir. 1993). At this stage, the Court does not resolve disputed jurisdictional facts in the defendants' favor. Rather, the issue is whether Plaintiff has made a sufficient threshold showing that each Defendant is properly subject to this Court's jurisdiction.

A complaint survives Rule 12(b)(6) scrutiny if it contains sufficient factual matters, accepted as true, to state a claim that is plausible on its face. The Court must draw reasonable inferences in Plaintiff's favor and may not resolve factual disputes or weigh competing

explanations at this stage. See *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). While legal conclusions need not be accepted, detailed factual allegations do not become inadequate merely because defendants offer an alternative narrative. *Id.* This standard has particular force in civil-rights cases involving motive, retaliatory purpose, municipal custom, and conspiracy, because those issues often turn on facts uniquely within the defendants' control and are ordinarily illuminated through discovery. Furthermore, with respect to *Monell* pleading, the Fourth Circuit has made clear that a plaintiff need not plead the complete evidentiary detail that may be required later at summary judgment or trial. *Jordan by Jordan v. Jackson*, 15 F.3d 333, 339-40 (4th Cir. 1994); *Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 403 (4th Cir. 2014).

**1.- Defendants' Rule 12(b)(1) and Rule 12(b)(2) challenges fail as a matter of law.**

Defendants invoke Rules 12(b)(1) and 12(b)(2) but their memorandum never identifies a jurisdictional defect; making merits arguments at the sufficiency of Plaintiff's claims. The Court should distinguish between a jurisdictional challenge and an attack on the adequacy of the pleadings. The Complaint establishes both subject matter jurisdiction and personal jurisdiction.

**A.- The Court has subject matter jurisdiction because the Complaint pleads federal claims arising under the Constitution and laws of the United States.**

The Complaint invokes federal-question jurisdiction under 28 U.S.C. § 1331 and jurisdiction under 28 U.S.C. § 1343 because Plaintiff brings claims under 42 U.S.C. § 1983 for violations of the First and Fourteenth Amendments. Complaint ¶¶ 9-10. Supplemental jurisdiction is invoked under 28 U.S.C. § 1367(a) over the related state-law claims because they arise from the

same nucleus of operative fact. Id. ¶ 12. Defendants themselves acknowledge that Plaintiff filed suit asserting § 1983 claims for First Amendment retaliation, Fourteenth Amendment stigma-plus due process, Fourteenth Amendment property-interest due process, *Monell* liability, and civil conspiracy. That ends any Rule 12(b)(1) inquiry.

Federal-question jurisdiction exists when the complaint asserts claims arising under federal law. Whether those federal claims are ultimately meritorious is a separate question. The Fourth Circuit has cautioned against treating merits arguments as jurisdictional defects. In *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 505-06 (4th Cir. 2015), the absence of a valid cause of action does not deprive a federal court of subject matter jurisdiction where the complaint otherwise invokes federal-question jurisdiction. Whenever the "jurisdictional facts are inextricably intertwined with those central to the merits, the district court should resolve the relevant factual disputes only after appropriate discovery." *Id*. at 506.

Defendants' actual arguments—that Plaintiff did not engage in protected speech, that he did not adequately allege publication for stigma-plus purposes, that he lacked a property interest, that he failed to plead Monell, and that he failed to plead conspiracy—are classic Rule 12(b)(6) arguments. Even if Defendants were correct on those points, that would not strip the Court of subject matter jurisdiction over this case. The same is true of supplemental jurisdiction over the state-law claims. Plaintiff alleges that the state-law claims arise from the same alleged retaliatory campaign, the same manipulated investigative process, the same administrative leave decision, and the same forced retirement that underlie the federal constitutional claims. Complaint ¶¶ 12, 14. As the federal and state claims are part of the same case or controversy, supplemental jurisdiction exists under § 1367(a).

To the extent Defendants contend that governmental immunity defeats one or more state-law claims, that argument does not eliminate subject matter jurisdiction over the federal claims or over the action as a whole. At most, it is a defense directed to a particular state-law cause of action. It does not support dismissal of the entire case under Rule 12(b)(1).

**B.- The Court has personal jurisdiction over all Defendants.**

Defendants' Rule 12(b)(2) invocation fails as their memorandum identifies no basis for contesting personal jurisdiction. Defendants do not argue that any defendant resides outside North Carolina, that any defendant lacks sufficient contacts with North Carolina, that service was defective, or that forcing any defendant to litigate in this District would offend due process. This Court plainly has personal jurisdiction over all Defendants.

The Complaint alleges that Defendant Town of Mooresville is a North Carolina municipal corporation. Complaint ¶ 17. It alleges that Defendant Jerome is the Town Manager of Mooresville, Defendant Campurciani is Chief of Police of the Mooresville Police Department and also Assistant Town Manager, and Defendant Carney was the Mayor of Mooresville at all relevant times. Id. ¶¶ 18-20. The Complaint further alleges that the acts and omissions underlying Plaintiff's claims—including the whistleblower disclosures, retaliatory internal-affairs investigation, administrative leave, suppression and manipulation of evidence, and constructive discharge—occurred in or were directed from the Town of Mooresville and the Mooresville Police Department within this District. Id. ¶¶ 13-15. A municipal corporation is plainly subject to suit in the state of its creation and operation. Individual defendants are ordinarily subject to general personal jurisdiction in the state of their domicile. See *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 132-34 (4th Cir. 2020).

Indeed, Defendants' own memorandum confirms the absence of any real Rule 12(b)(2) issue. It describes Plaintiff as a longtime employee of the Town's Police Department, discusses conduct by the Town Manager, Chief of Police, and Mayor of Mooresville, and challenges decisions allegedly made in response to events occurring in Mooresville, North Carolina. There is no plausible basis to suggest that these defendants are somehow beyond the reach of a federal court sitting in North Carolina. Accordingly, the Rule 12(b)(2) portion of the motion should be denied outright.

**C.- Because there is no genuine jurisdictional defect, the Court should treat the remainder of Defendants' motion as a merits motion only.**

Once the jurisdictional labels are stripped away, what remains is a Rule 12(b)(6) motion. That matters because the Court must evaluate the Complaint under pleading standards applicable to merits challenges. The Court has subject matter jurisdiction because Plaintiff pleads substantial federal constitutional claims under § 1983. The Court has personal jurisdiction because Defendants are North Carolina municipal actors and the alleged misconduct occurred in this District. The Rule 12(b)(1) and Rule 12(b)(2) aspects of the motion therefore fail.

**2.- The Complaint states a plausible First Amendment retaliation claim.**

To state a First Amendment retaliation claim, Plaintiff must allege that he engaged in protected First Amendment activity, Defendants took action adversely affecting his rights, and a causal relationship exists between the protected activity and retaliatory conduct. See generally, *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499–500 (4th Cir.

2005); *Hunter v. Town of Mocksville*, 789 F.3d 389, 396–99 (4th Cir. 2015). Defendants argue that the claim fails on all three elements. None of those arguments withstands scrutiny.

### A.- *Plaintiff plausibly alleges protected speech as a citizen on matters of public concern.*

Defendants' principal theme is that Plaintiff's speech is categorically unprotected because it related to his employment responsibilities. That argument ignores Fourth Circuit authority. The Fourth Circuit has been emphatic that the "critical question" is not whether the speech concerns the employee's work, but whether the speech itself was ordinarily within the scope of the employee's duties. *Hunter v. Town of Mocksville*, 789 F.3d 389, 396–99 (4th Cir. 2015). In *Hunter*, officers raised corruption concerns to the Governor's Office and were found to have spoken as citizens, not as employees, as contacting state officials about departmental corruption was not part of their professional activities. *Id*. The court rejected broad law-enforcement reporting of wrongdoing transforms every report of misconduct into unprotected employee speech. *Id*.

Plaintiff does not merely allege he performed routine internal review functions; the Complaint alleges he stepped outside operational channels and made disclosures to Town leadership, HR, the Town Attorney, IT preservation requests, and outside investigators in order to expose suspected suppression or manipulation of evidence involving the Mayor and the Chief of Police. Complaint ¶¶ 41-45, 53, 74, 76. His speech "was not limited to routine internal operational discussion or ordinary job duties" and he engaged in communications "outside the police chain" to ensure lawful handling of suspected misconduct. *Id*. ¶ 76. Those allegations squarely track the reasoning of *Hunter*.

In *Andrew v. Clark*, 561 F.3d 261 (4th Cir. 2009), a police command officer alleged retaliation after questioning a police shooting and disseminated concerns outside normal official

channels. *Id*. The Fourth Circuit reversed dismissal because whether the relevant speech was part of his official duties presented a factual dispute not suited for Rule 12(b)(6). *Id*. at 272. Even a command-level officer does not forfeit First Amendment protection simply because he learned troubling facts through public employment. *Id*. at 269.

In, *Durham v. Jones*, 737 F.3d 291 (4th Cir. 2013) the Fourth Circuit described allegations of falsified police reports, coerced criminal charges, and corruption within a sheriff's office as far more than an ordinary workplace dispute. *Id*. at 299-300. Serious law-enforcement misconduct is a matter on which public-employee speech "warrants protection." *Id*. at 303. Plaintiff alleges missing body-camera evidence, anomalous metadata, misclassified CAD records, suppressed Town Hall security evidence, retaliatory manipulation of internal investigations, and coercive efforts to silence a whistleblower. Complaint ¶¶ 26-40, 52-58, 73-76. If falsifying police reports and covering up law-enforcement wrongdoing are matters of public concern in *Durham*, then the suppression of police evidence tied to Mayor Carney and retaliation against a senior officer who raised those concerns is, if anything, even more obviously protected speech.

*Liverman v. City of Petersburg*, 844 F.3d 400 (4th Cir. 2016) provides further support. There, the Fourth Circuit held that police officers' speech criticizing training and supervision practices addressed matters of public concern because those issues implicated officer safety, public safety, and departmental integrity. *Id*. at 407. Plaintiff here alleges concerns over evidence integrity, abuse of public office, records manipulation, and public accountability. Complaint ¶ 75. Those subjects lie at the heart of public concern.

Fourth Circuit precedent rejects the simplistic argument that because an employee's job touched the subject matter, all related speech was unprotected. That is precisely the reasoning

*Hunter* and *Andrew* reject. The Complaint alleges that Plaintiff's speech extended beyond ordinary duties, and that is enough to survive dismissal.

**B.- Plaintiff plausibly alleges adverse action.**

Defendants next argue that Plaintiff suffered no actionable adverse action. That argument ignores the breadth of what the Complaint alleges. The adverse-action inquiry asks whether the defendants' conduct would likely deter a person of ordinary firmness from engaging in protected speech. *Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005). Plaintiff pleads: 1) a hostile confrontation from Chief Campurciani after Plaintiff began evidence-location efforts; 2) resurrection of a stale complaint previously treated as closed; 3) initiation of a punitive internal-affairs investigation; 4) administrative leave, stripping of meaningful authority, exclusion from operations and information, denial of investigative materials and meaningful process; 5) circulation of stigmatizing allegations; 6) coercive pressure to retire, and 7) forced retirement under threat to pension-related harm. Complaint ¶¶ 43-44, 47-68, 78. Those allegations describe serious employment consequences, not petty slights. Constructive discharge or coerced retirement is plainly adverse. Even the pre-retirement measures alleged here would easily chill a reasonable officer from speaking out.

Defendants construe Plaintiff's administrative leave by asserting it as a reasonable response to criticism of a supervisor. That is an argument about Defendants' version of the facts and their asserted justification; not a pleading-stage basis for dismissal. The Court must accept Plaintiff's version: that the investigation was manufactured as retaliation and leave was part of a campaign to drive him out. Complaint ¶¶ 50-58, 78-81. Under that version adverse action is pleaded.

**C.- Plaintiff plausibly alleges causation.**

Defendants' causation argument fails, as they insist Plaintiff's allegations do not connect his protected activity to the retaliatory actions. The Complaint pleads timing and escalation. Plaintiff sought IT assistance on February 5th, 2025, to preserve missing body-camera evidence. Complaint ¶ 42. Chief Campurciani confronted him and said, "You and I have a problem," in a manner Plaintiff understood as hostile to his investigation. *Id*. ¶ 43. A previously resolved civil complaint was revived and weaponized after Plaintiff's protected activity. *Id*. ¶¶ 47-51. Plaintiff then sat for an interview with outside investigators on February 28th, 2025, and disclosed suspected cover-up and misuse of authority. *Id*. ¶ 53. The next day he was placed on administrative leave and stripped of authority, and ultimately into forced retirement. *Id*. ¶¶ 59-67. Temporal proximity, sudden changes in treatment, procedural irregularities, and implausible or shifting justifications all support a plausible inference of retaliation. See *Porter v. Bd. of Trustees of N.C. State Univ.*, 72 F.4th 573, 583-584 (4th Cir. 2023). Rule 12(b)(6) does not require him to prove but-for causation with evidence at the outset, only plausible allegations, and Plaintiff has done far more than that.

**2.- The Complaint plausibly alleges Mayor Carney's personal involvement.**

Defendants argue that all individual-capacity claims against Mayor Carney fail because he lacked formal statutory authority over Plaintiff's employment. That argument is both too narrow and too early pled at this stage for a bar for recovery. Section 1983 liability turns on personal involvement in the constitutional violation, not simply on formal title or statutory power over employment decisions. A person who sets a retaliatory scheme in motion, knowingly participates in it, or reaches an agreement to suppress protected activity and punish the speaker can be liable even if someone else signs the paperwork. The Complaint alleges that Mayor Carney was not

merely a bystander, but, he was the subject of the incidents Plaintiff was trying to expose; that he personally benefited from suppression of evidence; abandonment of ordinary protocols; that he exercised significant influence over Town leadership and senior police command. That he participated in an agreement or understanding to retaliate against Plaintiff and neutralize information concerning misconduct of officials. Complaint ¶¶ 20, 114-120.

The mayor's alleged motive is central: Plaintiff alleges that exposing the truth about the traffic stop and the after-hours Town Hall incident threatened Carney directly. Complaint ¶¶ 26-40, 115. The Complaint alleges a conspiracy among Carney, Jerome, and Campurciani to protect Mayor Carney, discredit Plaintiff, and remove him from his position of authority. *Id*. ¶¶ 114-124. That is enough to plausibly plead Carney's involvement at this stage. Defendants insist there are no allegations tying Carney to the employment actions. That is not correct. The Complaint expressly alleges he participated in, benefited from, and was part of the retaliatory scheme. Complaint ¶¶ 20, 114-124. Whether discovery ultimately proves direct communications, instructions, or coordination is a later question. Plaintiff need not possess internal communications before discovery in order to survive dismissal.

**3.- The Complaint states a plausible stigma-plus due process claim.**

The Second Claim for Relief alleges deprivation of Plaintiff's liberty interest in reputation and future employment opportunities. Defendants contend the claim fails because Plaintiff does not adequately plead public disclosure or stigmatizing accusations. Defendants' argument fails. To state a valid claim, Plaintiff must allege that the charges 1) placed a stigma on his reputation, 2) were made public, 3) were made in conjunction with termination or demotion, and 4) were false. *Sciolino v. City of Newport News,* 480 F.3d 642, 646 (4th Cir. 2007). Plaintiff pleads each element.

**A.- Plaintiff plausibly alleges stigma.**

Plaintiff alleges that Defendants made, authorized, and disseminated false and stigmatizing accusations concerning his honesty, integrity, professionalism, and alleged misconduct serious enough to warrant discipline. Complaint ¶¶ 85-88. Accusations suggesting dishonesty, abuse of authority, serious misconduct, or unfitness for continued service are precisely the sort of allegations that implicate a liberty interest. See *Cannon v. Village of Bald Head Island*, 891 F.3d 489, 501-07 (4th Cir. 2018).

This case does not involve routine criticism of Plaintiff's job performance or generalized workplace dissatisfaction. Plaintiff alleges that Defendants "made, authorized, and disseminated false and stigmatizing statements and accusations concerning Plaintiff's honesty, integrity, professionalism, and alleged policy violations, including portraying Plaintiff as having engaged in serious misconduct warranting discipline," and that those accusations arose from "a resurrected citizen complaint previously addressed as a minor policy issue," together with "official actions implying Plaintiff's unfitness for continued service, including administrative leave, isolation, and a coerced separation." Complaint ¶¶ 65, 85-88.

The Complaint alleges that Defendants communicated those accusations "within MPD, to Town leadership, through official Internal Affairs and investigative channels, and to individuals involved in employment and disciplinary decision-making," while simultaneously placing Plaintiff on indefinite administrative leave, denying him access to the investigative file, advancing a disciplinary process "untethered from legitimate misconduct," and allowing "stigmatizing allegations to circulate without a meaningful opportunity to clear his name." *Id*. The accusations

did not only question Plaintiff's judgment; they branded him as dishonest, professionally compromised, and unfit for continued command-level service, which qualifies as stigmatizing. *Id*.

**B.- Plaintiff plausibly alleges publication.**

Defendants press hardest on publication, arguing the allegations are only internal. But *Sciolino*, 480 F.3d at 657–58, does not require a plaintiff at the pleading stage to identify a completed disclosure to a named future employer. It is enough to allege that prospective employers or the public will inspect the stigmatizing material. *Id.* Plaintiff alleges that the accusations were communicated within MPD, to Town leadership, and through official internal-affairs and investigative channels. Complaint ¶ 87. The accusations were used in connection with administrative leave, loss of authority, and his coerced separation. Id. ¶¶ 88-89. For a law-enforcement officer, official investigative accusations tied to separation from service plausibly threaten future employability in law enforcement. That is the very concern *Sciolino* protects.

In *Cannon*, 891 F.3d at 501–07, the Fourth Circuit held that law-enforcement officers stated a cognizable liberty-interest claim where their employer publicly disclosed stigmatizing reasons for their discharge—including allegations serious enough to call into question their professional fitness—and failed to afford them a meaningful name-clearing opportunity before those disclosures were made. *Id*. The court made clear that when a public employer ties false or stigmatizing accusations to an officer's separation from service, due process is implicated because those accusations threaten the officer's reputation and future employment prospects in law enforcement. *Id*. Plaintiff's allegations fit squarely within that framework: Defendants circulated accusations implying serious misconduct, used those accusations in connection with administrative leave and coerced separation, and denied him any meaningful opportunity to clear

his name before the resulting reputational harm took hold. Compl. ¶¶ 65, 85–92. Plaintiff has already alleged enough to move into discovery.

**C.- Plaintiff plausibly alleges the plus factor and falsity.**

Under Fourth Circuit law, a liberty-interest claim requires not only stigmatizing accusations, but also a concurrent alteration of legal status, such as termination, demotion, or other materially adverse change in employment status. *See Sciolino v. City of Newport News*, 480 F.3d 642, 646 (4th Cir. 2007); *Cannon v. Vill. of Bald Head Island*, 891 F.3d 489, 501–07 (4th Cir. 2018). The Complaint states that the stigmatizing accusations were made "in connection with, and as part of," Defendants' decision to place him on administrative leave, strip him of authority, and force his separation from employment. Compl. ¶¶ 65, 85–92. Defendants altered Plaintiff's legal status by "effectively terminating him through constructive discharge and forcing him into involuntary retirement under threat to his earned benefits." *Id*. Those allegations more than sufficiently plead the "plus" element because they describe not merely reputational harm, but a concrete employment deprivation tied directly to the stigmatizing charges. *See Sciolino*, 480 F.3d at 646; *Cannon*, 891 F.3d at 501–07.

The Complaint alleges that Defendants' accusations were false and stigmatizing, and that Plaintiff repeatedly sought a fair and formal process to prove them false. *Id.* He further alleges that he "was never provided a meaningful name-clearing hearing before a neutral decision-maker," and that he was denied notice of the specific charges, denied access to the evidence against him, and denied any meaningful opportunity to be heard before or in connection with his constructive discharge. *Id*. That is precisely the kind of deprivation recognized in *Sciolino*, which holds that when false, stigmatizing charges are made public in connection with discharge, due process requires a meaningful opportunity to clear one's name. *Sciolino*, 480 F.3d at 646, 649–50.

*Cannon* confirms in the law-enforcement context that a public employer may not disseminate stigmatizing reasons for an officer's separation without first affording a meaningful name-clearing opportunity. *Cannon*, 891 F.3d at 501–07. At the pleading stage, Plaintiff's allegations easily satisfy that standard.

**D.- Plaintiff plausibly alleges denial of a name-clearing hearing.**

The Complaint alleges that Plaintiff repeatedly sought a fair formal process and an opportunity to prove the allegations false, but was denied meaningful notice, access to evidence, and a neutral decision-maker. Complaint ¶¶ 90-92. *Cannon* and *Sciolino* clearly establish that a public employer may not disseminate false, stigmatizing charges connected to separation without first providing a meaningful opportunity to clear one's name. *Cannon*, 891 F.3d at 501–07. The stigma-plus claim therefore survives.

**4.- The property-interest due process claim should not be dismissed at the pleading stage.**

Defendants argue that Plaintiff was necessarily an at-will employee and therefore had no protected property interest. That argument oversimplifies both the Complaint and the law.

First, Plaintiff alleges more than a bare interest in continued employment. He alleges protected interests in his continued public employment, his rank and position, and his accrued retirement, pension, and separation benefits. Complaint ¶¶ 97-100. Defendants do not meaningfully grapple with the benefit-related allegations; they simply assume the entire claim rises or falls on general at-will doctrine.

Second, even under Defendants' authorities, the question whether Plaintiff's retirement was voluntary cannot be resolved on the pleadings. Stone recognizes that a resignation may be treated

as involuntary where obtained through misrepresentation or through duress or coercion. *Stone v. University of Maryland Medical System Corp.*, 855 F.2d 167, 173-74 (4th Cir. 1988). The Complaint states exactly that. Plaintiff was told he should retire, was maintained on leave without meaningful process, and was informed that if he did not retire and discipline imposed, his separation allowance and retirement benefits could be jeopardized. Complaint ¶¶ 62-67. Those allegations distinguish this case from a voluntary retirement taken for strategic reasons after a lawful personnel process. Plaintiff was cornered into retirement by a retaliatory campaign and threats to his earned benefits. *Id.* Whether those threats amounted to coercion under *Stone* is a factual issue requiring discovery. Court does not yet have before it the policies, statutes, ordinances, retirement rules, or personnel regulations that may define Plaintiff's interests in rank, continued employment procedures, or accrued benefits. Dismissing the claim now would assume facts not in the record and would be premature to extinguish the claim with prejudice at this stage.

**5.- The *Monell* claim is sufficiently pleaded.**

Defendants contend Plaintiff's *Monell* allegations are too conclusory. That is wrong. A *Monell* claim requires plausible allegations that an official policy, custom, usage, decision by a final policymaker, failure to train or supervise, or ratification caused the constitutional injury. Plaintiff's Complaint pleads several such theories in a fact-specific manner. See generally *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–94 (1978)

The Complaint alleges: 1) protecting politically connected officials and senior command staff from scrutiny; 2) suppressing, manipulating, misclassifying, deleting, or restricting access to electronic evidence when it implicates senior Town officials; 3) retaliating against employees who report misconduct, 4) using internal-affairs investigations and administrative leave as punitive

tools, 5) concentrating investigative and disciplinary authority in conflicted officials, and 6)failing to establish independent review mechanisms for allegations involving senior Town officials. Complaint ¶ 106. It is pled that these customs were widespread and well-settled, that Jerome and Campurciani possessed final authority over personnel and investigative decisions, and that they personally authorized, directed, and ratified the conduct at issue. Id. ¶¶ 107-111. That is not formulaic pleading. It is a detailed municipal-liability theory tied to the actual facts of the case.

The Fourth Circuit has repeatedly warned against requiring *Monell* plaintiffs to plead the evidence they would need to prove their claims later. In *Jordan*, 15 F.3d at 339–40., the court made clear that detailed proof of multiple incidents is not required at the pleading stage. *Id*. In *Edwards v. City of Goldsboro,* 178 F.3d 231, 244–45 (4th Cir. 1999), the court likewise emphasized that § 1983 municipal claims remain subject to notice pleading. And in *Owens v. Balt. City State's Att'ys Office*, 767 F.3d 379, 402–03 (4th Cir. 2014), the Fourth Circuit again rejected an unduly demanding approach to *Monell* pleading, explaining that plaintiffs need not recite the full universe of incidents that may eventually support a custom theory. Specifically, "Plaintiff's complaint will not be dismissed as long as he provides sufficient detail about his claim to show that he has a more-than-conceivable chance of success on the merits." *Id*. at 396.

Defendants attempt to recast the Complaint as relying on one incident. But that misreads the pleading. Plaintiff alleges a pattern of concealment and retaliation reflected in two separate incidents involving the Mayor Carney, the concentration of authority in Chief Campurciani, Town ratification, and retaliatory disciplinary misuse. Complaint ¶¶ 3-8, 34-40, 69-71, 105-111. He also alleges that the relevant final policymakers themselves were the actors. That is enough to plausibly allege municipal liability.

**6.- The civil-conspiracy claim is also plausibly pleaded.**

Defendants seek dismissal of the § 1983 conspiracy claim on two grounds: lack of factual detail and the intracorporate-conspiracy doctrine. Neither argument succeeds. A civil-rights conspiracy may be shown through circumstantial evidence that defendants reached a meeting of the minds to violate constitutional rights. *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996)*.* Under *Hinkle*, 81 F.3d at 421*,* a plaintiff may prove a § 1983 conspiracy through circumstantial evidence showing a meeting of the minds*.* Direct evidence is rarely available at the pleading stage. *Id*. Plaintiff therefore may rely on allegations of coordinated, interdependent acts pursuing a common unlawful objective. *Id*.

That is precisely what the Complaint does. It alleges an agreement among Carney, Campurciani, and Jerome to suppress evidence concerning the Mayor's conduct, discredit Plaintiff as a witness and whistleblower, and remove him from his position of authority. Complaint ¶¶ 114-120. It then pleads the overt acts that allegedly implemented that agreement: the hostile warning, revival of a stale complaint, redirection of investigative resources toward Plaintiff rather than the underlying incidents, administrative leave, internal circulation of stigmatizing allegations, pressure to retire, and ratification of each other's conduct. Id. ¶¶ 117-120. Those allegations are sufficient under *Hinkle*, 81 F.3d at 421.

The intracorporate-conspiracy doctrine also does not defeat the claim on the pleadings. The Fourth Circuit recognizes exceptions, including where defendants possess an independent personal stake in the illegal objective. *Buschi v. Kirven*, 775 F.2d 1240, 1252-53 (4th Cir. 1985). Plaintiff plausibly alleges precisely such stakes here. Mayor Carney allegedly had a personal stake in suppressing information about incidents involving him. Complaint ¶¶ 20, 115. Campurciani

allegedly had a personal stake because the evidence and disclosures implicated his supervisory role and his own conduct. Id. ¶¶ 28, 54, 69-71. Jerome allegedly had a personal stake because she is alleged to have authorized or ratified the retaliatory course despite notice of Plaintiff's disclosures and the external PBA email. Id. ¶¶ 18, 46, 69-71, 109-110.

At a minimum, whether the personal-stake exception applies is not a question that should be resolved against Plaintiff on the bare pleadings.

**7.- Qualified immunity does not support dismissal.**

Defendants argue in the alternative that the individual defendants are entitled to qualified immunity. That argument is premature and, as to the key claims, wrong on the merits.

**A.- The law governing police-whistleblower speech was clearly established.**

The Fourth Circuit had clearly established that public employees—especially law-enforcement personnel—do not lose First Amendment protection merely because their speech concerns wrongdoing they learned about through employment. *Hunter v. Town of Mocksville*, 789 F.3d 389, 396–99 (4th Cir. 2015); *Andrew v. Clark*, 561 F.3d 261 (4th Cir. 2009). Under those cases, a reasonable official would have known that retaliating against a senior officer for raising concerns about missing body-camera evidence, misclassified police records, and suspected suppression of evidence involving the Mayor and police leadership violated clearly established law.

**B. The liberty-interest right was also clearly established.**

The same is true for the stigma-plus claim. *Sciolino*, 480 F.3d at 657–58, clearly established the framework for liberty-interest claims based on false stigmatizing accusations made public in connection with discharge. *Id. Cannon*, 891 F.3d at 501–07, then applied those principles in the law-enforcement context and held that public employers may not disseminate false, stigmatizing reasons for discharge without a meaningful name-clearing opportunity. *Id*. Thus, if Defendants did what the Complaint alleges—circulated or disseminated false stigmatizing accusations connected to Plaintiff's forced separation while denying him meaningful process—qualified immunity is unavailable as a defense.

**C. The coercion issue cannot be resolved in Defendants' favor now.**

As for the involuntary-retirement/due-process issue, *Stone*, 855 F.2d at 173–74. itself makes clear that resignations induced by duress, coercion, or misrepresentation are not treated as voluntary. *Id*. Plaintiff's allegations fit that framework. Qualified immunity cannot be granted by assuming away the very coercion Plaintiff alleges. *Id*. In short, qualified immunity does not justify dismissal on the pleadings.

**8.     The Court should not dismiss the case with prejudice, and any duplicative official-capacity issue can be handled narrowly.**

Plaintiff recognizes that where a municipality is sued directly, official-capacity claims against individual municipal officers are often treated as duplicative. If the Court agrees with Defendants on that limited point, Plaintiff respectfully requests that those official-capacity allegations simply be treated as merged into the claims against the Town rather than dismissed with prejudice in a way that complicates the pleadings unnecessarily.

But beyond that narrow issue, dismissal with prejudice would be improper. This case is at the threshold pleading stage. If the Court believes any claim requires greater factual detail—whether regarding publication, property interests, or Mayor Carney's specific role—Plaintiff should be granted leave to amend. The Fourth Circuit strongly favors adjudicating cases on the merits rather than terminating them on pleading technicalities where amendment could cure any deficiency.

## Conclusion

Defendants' motion is an effort to convert a fact-specific retaliation case into a pleading defect. The Complaint, however, alleges a detailed sequence of protected disclosures, retaliatory actions, stigmatizing accusations, coercive pressure, and municipal ratification. Fourth Circuit law does not permit dismissal of such claims at this stage.

For those reasons, Plaintiff respectfully requests that the Court: 1) **deny** the motion to dismiss as to the First Amendment retaliation claim; 2) **deny** the motion to dismiss as to the Fourteenth Amendment stigma-plus claim; 3) **deny** the motion to dismiss as to the Fourteenth Amendment due-process/property-interest claim, or alternatively permit amendment after targeted clarification; 4) **deny** the motion to dismiss as to the Monell claim; 5) **deny** the motion to dismiss as to the civil-conspiracy claim; 6) **deny** dismissal of the individual-capacity claims against Mayor Carney; 7) reject Defendants' qualified-immunity arguments at the pleading stage; and 8) if the Court finds any portion of the pleading deficient, grant Plaintiff **leave to amend** rather than dismissing any claim with prejudice.

To the extent the Court concludes the official-capacity claims against Jerome and Campurciani are duplicative of the claim against the Town, Plaintiff respectfully requests only that those claims be treated as redundant to the municipal claim, while the remainder of the Complaint proceeds into discovery.

Dated: 20th day of April, 2026

*Counsel for Plaintiff*:
/s C. Christopher Adkins
N.C. Bar No. 46950
Adkins Law, PLLC
9620 Sherrill Estates Road
Huntersville, North Carolina 28078
Phone: (704) 274-5677
Fax: (877) 208-7577
chris@huntersvillelawyer.com

## CERTIFICATION REGARDING ARTIFICIAL INTELLIGENCE

The undersigned submits that the foregoing Plaintiff's Memorandum of Law in Further Opposition to Defendant's Motion to Dismiss, was not:

1. No artificial intelligence was employed in doing the research for the preparation of this Memorandum, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg, as well as Google and Google Scholar;

2. Every statement and every citation to an authority contained in this Memorandum has been checked by the undersigned as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 20th day of April, 2026.

/s C. Christopher Adkins
N.C. Bar No. 46950
Adkins Law, PLLC
9620 Sherrill Estates Road
Huntersville, North Carolina 28078
Phone: (704) 274-5677
Fax: (877) 208-7577
chris@huntersvillelawyer.com

# CERTIFICATE OF SERVICE

This is to certify that the undersigned has this day electronically filed the foregoing **PLAINTIFF'S MEMORANDUM OF LAW IN FURTHER OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Jake W. Stewart, NC Bar #51157
Ariella Z. Walsh, NC Bar #55109 *Attorneys for Defendants*
P.O. Box 30787
Charlotte, NC 28230
Telephone (704) 332-8300
Facsimile (704) 332-9994
jstewart@cshlaw.com
awalsh@cshlaw.com

This the 20TH day of April, 2026

/s C. Christopher Adkins
N.C. Bar No. 46950
Adkins Law, PLLC
9620 Sherrill Estates Road
Huntersville, North Carolina 28078
Phone: (704) 274-5677
Fax: (877) 208-7577
chris@huntersvillelawyer.com